UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

ROLLING MEADOW RANCH GROVES,
LLC,

    Petitioner,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE,

    Respondent.
_____/

## PETITION FOR JUDICIAL REVIEW

Petitioner ROLLING MEADOW RANCH GROVES, LLC files this Petition for Judicial Review of a final determination by the National Appeals Division of the UNITED STATES DEPARTMENT OF AGRICULTURE, and alleges:

### NATURE OF CLAIM

1. Petitioner ROLLING MEADOW RANCH GROVES, LLC ("RMR") files this Petition for judicial review of an adverse determination incorrectly denying benefits available to RMR under the 2017 Wildfires and Hurricanes Indemnity Program and the Florida Citrus Recovery Block Grant.

2. Despite RMR suffering obvious and substantial losses as a result of Hurricane Irma, Respondent UNITED STATES DEPARTMENT OF AGRICULTURE, through its Farm Service Agency ("FSA"), arbitrarily and capriciously refused to follow the regulatory requirement to use the best data available in calculating RMR's losses.  Instead, the FSA relied on an inapplicable formula and determined that RMR incurred a *negative* loss from the Hurricane, disregarding the

1

intent of Congress and ignoring specific language in the WHIP regulation.

3. While RMR successfully appealed that decision before a National Appeals Division Administrative Law Judge, the FSA sought further review from the National Appeals Division Director, who reversed the Administrative Law Judge's ruling.

4. Having exhausted its administrative remedies, RMR now petitions this Court for judicial review of the final agency decision, and respectfully requests that this Court set aside the Director's decision and reinstate the Administrative Law Judge's finding that the FSA failed to follow the regulations and should consider the best data available demonstrating RMR's actual losses in calculating benefits due to RMR.

## PARTIES, JURISDICTION, AND VENUE

5. RMR is a Florida limited liability company with its main administrative office in Vero Beach, Florida, which is within this District.

6. The FSA is responsible for administering the 2017 Wildfires and Hurricanes Indemnity Program. The FSA has several offices located throughout this District.

7. This Court has subject matter jurisdiction over this Petition pursuant to 7 U.S.C. § 6999; 7 C.F.R. § 11.13; and 5 U.S.C. § 701 *et seq*.

8. RMR is a person that suffered a legal wrong because of the FSA's action, or was adversely affected or aggrieved by the FSA's action, within the meaning of 5 U.S.C. § 702.

9. Venue is appropriate in this Court pursuant to 5 U.S.C. § 703, which permits this Petition to be filed in any court of competent jurisdiction.

10. All conditions precedent to this Petition have been satisfied.

## GENERAL ALLEGATIONS

**A.      RMR's Business and Loss from Hurricane Irma.**

11. RMR is a family owned and operated Florida citrus company with approximately 1,600 acres of groves located in Lake Wales, Florida. RMR's groves include sweet oranges, tangerines, tangors, and grapefruit, but most of the acreage is planted with Valencia oranges.

12. Over the last two decades RMR and other Florida citrus growers have been waging an ongoing battle with a devastating bacterial disease commonly known as Citrus Greening. The disease has reduced Florida's statewide orange production from its 1997/1998 peak of 244 million boxes to just 70 million boxes in a recent year, a decline of over 70%. Many citrus growers, processors, and packers have gone out of business as a result.

13. Some citrus growers, however, decided to stay and fight the disease. Using innovative techniques and substantial capital expenditures, RMR was able to successfully reverse its downward yield trend and increase its production. Many other citrus growers, in contrast, have continued to experience declining yields. RMR took drastic measures that caused substantial short-term losses to ensure long-term economic stability. The years in which RMR's recovery practices caused losses were fully encompassed in FSA's WHIP yield calculations yielding unrealistic results when determining RMR's loss from Hurricane Irma. FSA was provided accurate data depicting RMR's actual loss by way of photographs, loss appraisals from Federal Crop Insurance Corporation ("FCIC") certified adjusters, and historical production practices. FSA chose to ignore congressional mandate and the WHIP regulation by disregarding the best data available.

14. Hurricane Irma impacted Florida in September 2017. RMR's groves were not spared, and experienced nearly 100 mile-per-hour winds that caused extensive tree and fruit damage losses across the entire acreage.

15. Following the storm, RMR contacted its insurer and reported significant crop losses/damages. RMR's insurer sent an independent FCIC certified loss adjuster to quantify the

loss/damage. Based on ground counts the loss adjuster appraised the actual loss RMR incurred to be 41% of its Valencia crop, i.e., 153,376.2 boxes of Valencia oranges, with a market value at that time in excess of $2,000,000.

16. The large loss reflected the gains that RMR had made in combatting Citrus Greening. RMR was still able to produce 232,107 boxes of Valencia oranges from 1097.2 acres planted despite the Hurricane (215,475 boxes were able to be sold for processing, and 16,632 boxes were able to be sold as fresh oranges).

17. Adding the 153,376.2 loss and the 232,107 actual production would have equaled 385,483.2 boxes, or a yield of 351.33 boxes per planted acre, which if not for Hurricane Irma would have returned RMR to the yield level that it was able to produce in 2013, as reflected in the chart below:

| Year | Valencia Orange Acreage Planted | Valencia Orange Production (Boxes) | Yield (production/acre) |
|---|---|---|---|
| 2017 (last full growing season before Irma) | 1020 | 228833 | 224.35 |
| 2016 | 1053 | 133168 | 126.47 |
| 2015 | 947 | 140829 | 148.71 |
| 2014 | 927 | 173877 | 187.57 |
| 2013 | 1103 | 386903 | 350.77 |

18. The yields in subsequent years bear out the upward trend; following the setback of Hurricane Irma RMR yielded: 301 boxes/acre (2019); 333 boxes/acre (2020); 365 boxes/acre (estimate) (2021).

19. Overall Florida yield trends over the period leading up to Hurricane Irma , in contrast, were declining: 279 boxes/acre (2013); 220 boxes/acre (2014); 217 boxes/acre (2015); 209 boxes/acre (2016); 171 boxes/acre (2017) ). When utilizing a five-year average to quantify loss during a consistent yield downtrend, as was done by FSA, loss will always be calculated

regardless if a disaster event actually takes place. The opposite occurs when increasing yield trends are used in a five-year average, losses can be minimized to a point where they turn negative, exactly what took place in RMR's case.

20.  As with all Florida citrus crops, RMR's crop was insured under a dollar plan which did not have an associated yield.

21.  The best evidence of RMR's actual loss from Hurricane Irma was the independent FCIC certified loss adjuster's appraisal of the loss, based on *actual ground counts* of the damaged product.

**B.  RMR's Claim for WHIP Benefits.**

22.  Following the large loss from Hurricane Irma, RMR timely applied for assistance from the 2017 Wildfires and Hurricanes Indemnity Program ("WHIP"), as well as the associated Florida Citrus Recovery Block Grant program.

23.  The WHIP program was authorized by the Bipartisan Budget Act of 2018, PL 115-123, 132 Stat 64.  As described therein, Congress appropriated funds "for necessary expenses related to crops, trees, bushes, and vine losses related to the consequences of Hurricanes Harvey, Irma, Maria, and other hurricanes and wildfires occurring in calendar year 2017[.]"

24.  As further explained in the federal regulations, consistent with the purpose ascribed by the statute, WHIP "provides disaster assistance for necessary expenses related to crop, tree, bush, and vine losses related to the consequences of wildfires, hurricanes, and Tropical Storm Cindy that occurred in calendar year 2017[.]"  7 C.F.R. § 760.1500(b) (2018).

25.  Under the regulations, the FSA has flexibility to work with farmers to determine the available benefits to advance the purpose of the WHIP program.  For example, 7 C.F.R. § 760.1505(b) & (c) (2018) allows FSA county committees to "make the necessary adjustments"

to increase or reduce the calculated WHIP yield in light of the applicant's specific circumstances. 7 C.F.R. § 760.1513(f)(7) (2018) allows the FSA county committee to assign production if "Other appropriate causes exist for such assignment."  The same is true for the related Actual Production History ("APH") regulations in 7 C.F.R. part 400, subpart G, which utilize "Approved APH yield" that may be "adjusted or unadjusted" and specifies that production reports "are subject to audit or review" and that the "reported yield is subject to revision, if needed," including "recomputing the approved APH yield" "at any time."  7 C.F.R. §§ 400.52(e) & 400.53(b).  7 C.F.R. § 400.55(f)(3)(i) particularly allows for determination of APH yields for perennial crops "If significant upward or downward yield trends are indicated."

26. RMR's WHIP payment should have been calculated as the "expected value multiplied by the WHIP factor minus actual value minus salvage value times share times payment factor minus indemnity."  (FSA Handbook, Wildfires and Hurricanes Indemnity Program ("FSA Handbook"), par. 211).

27. Pursuant to 7 C.F.R. § 760.1505(h) (2018), RMR's "expected value" should have been determined from the "best data available" to the FSA – in this case, the independent FCIC certified loss adjuster's appraisal report documenting RMR's actual losses.

28. However, instead of looking to the actual information regarding RMR's losses, FSA based its calculation solely on RMR's 5-year average yield pursuant to the data above, calculating an expected yield of 207.57 boxes per acre, far less than the 351.33 boxes per acre actual yield of damaged and undamaged crops described above.

29. The FSA based its decision to solely rely on the 5-year average on the following regulation:

(c) The 2017 WHIP yield is:

>   (1)   The producer's APH for insured crops under a crop insurance policy that has an associated yield and for NAP covered crops, excluding all crops located in Puerto Rico;
>   (2)   The county expected yield for crops located in Puerto Rico and uninsured crops, excluding citrus crops located in Florida; or
>   (3)   For uninsured citrus crops located in Florida:
>
>>   (i)   Determined based on information provided on FSA–893 and supported by evidence that meets the requirements of § 760.1513(c), or
>>   (ii)  If FSA–893 and supporting documentation are not submitted, the county expected yield.

7 C.F.R. § 760.1511(c) (2018).

30. However, RMR does not fit into any of these categories. Its crops were not insured under a policy with an associated yield, were not covered by the Noninsured Crop Disaster Assistance Program ("NAP"), were not located in Puerto Rico, and were not uninsured.

31. In the absence of specific regulatory guidance for calculating RMR's yield, the FSA should have fallen back on the general regulatory requirements of 7 C.F.R. § 760.1505(h) (2018) and used the "best data available," which would not have been the 5-year average of past yields.

32. Due to RMR's substantial investment in combatting Citrus Greening, its yields were *increasing* at the time of Hurricane Irma, such that using a 5-year average of past yields substantially undervalued the actual loss incurred by RMR. The increasing yield trends evident prior to Hurricane Irma have been borne out with the yields after Hurricane Irma, further evidencing the invalidity of the FSA's decision.

33. In fact, by using the 5-year average, FSA determined that RMR suffered a *negative* loss as a result of Hurricane Irma – according to the FSA, RMR was left *better off* from the hurricane's impact.

34. This determination was contrary to the purpose of the WHIP program, is in direct opposition to the intent of the statute and regulations, and was arbitrary, capricious, an abuse of

discretion, and otherwise not in accordance with law.

35. As a result of the FSA's decision, RMR was also denied funds from the Florida Citrus Recovery Block Grant , solely because it had been denied WHIP benefits.

**C.    RMR's Appeal of Claim Decision.**

36. RMR appealed the FSA decision to the National Appeals Division ("NAD"), and in part argued that the FSA incorrectly relied on a 5-year average yield that did not accurately reflect RMR's true losses caused by Hurricane Irma. A true and correct copy of the appeal is attached as Exhibit 1.

37. Following a hearing, the NAD Administrative Law Judge agreed with RMR that the FSA "failed to apply the correct rules and regulations when it calculated RMR's WHIP payment" and did not use the best data available when it rejected the independent FCIC certified loss adjuster's appraisal report documenting RMR's actual loss. A true and correct copy of the ruling is attached as Exhibit 2.

38. Following the adverse decision, on February 27, 2020 the FSA sought further review by the Director of the National Appeals Division pursuant to 7 C.F.R. § 11.9. A true and correct copy of the Request for Director Review is attached as Exhibit 3.

39. On March 5, 2020, RMR responded and opposed the FSA's request. A true and correct copy of RMR's opposition is attached as Exhibit 4.

40. On September 29, 2020, over 6 months later, the Director issued a decision reversing the Administrative Law Judge and concluding that the FSA appropriately used RMR's 5-year average yield in calculating the WHIP payment. A true and correct copy of the Director Review Determination is attached as Exhibit 5.

41. RMR requested reconsideration of the Director's decision pursuant to 7 C.F.R.

§ 11.11. A true and correct copy of the reconsideration request is attached as Exhibit 6. In part, the request for reconsideration noted that the Director's decision was untimely based on 7 C.F.R. § 11.9(d)(2)(i) (requiring a ruling within 10 business days of receipt of a request for review), and further was contrary to the controlling statute and regulations by affirming the FSA's decision not to use the best data available to calculate RMR's loss.

42. The Director denied RMR's request for review, and RMR received a copy of the ruling on January 4, 2021. The ruling states: "This determination is the final NAD decision in this matter." A true and correct copy of the ruling is attached as Exhibit 7.

43. RMR now seeks judicial review of the final agency determination pursuant to 7 U.S.C. § 6999; 7 C.F.R. § 11.13; and 5 U.S.C. § 701 *et seq*.

## PETITION FOR REVIEW

RMR incorporates the allegations in Paragraphs 1-43 above as if fully set forth herein.

44. Pursuant to pursuant to 7 U.S.C. § 6999 and 7 C.F.R. § 11.13, the final determination of the National Appeals Division in this case is reviewable by this Court in accordance with Chapter 7 of Title 5, U.S. Code.

45. Pursuant to 5 U.S.C. § 706(2), this Court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

46. The Director's review decision was not in accordance with the law because it was issued more than 10 business days after receipt of the FSA's request for review, in contravention of 7 C.F.R. § 11.9(d)(2)(i).

47. The FSA's decision to apply 7 C.F.R. § 760.1511(c)(3) (2018) and determine RMR's expected yield solely pursuant to a 5-year average, and the Director's ruling affirming that

decision, were not in accordance with the law because RMR's crops were insured.

48.     The FSA's decision not to consider RMR's appraisal report, and the Director's ruling affirming that decision, were not in accordance with 7 C.F.R. § 760.1505(h) (2018).

49.     The decision to solely rely on a 5-year average of past yields despite evidence of RMR's actual loss and given RMR's increasing yield trend at the time of Hurricane Irma was arbitrary, capricious, and an abuse of discretion.

50.     Pursuant to 5 U.S.C. § 706(2), this Court shall hold unlawful and set aside agency action, findings, and conclusions found to be unsupported by substantial evidence.

51.     The FSA's conclusion that RMR suffered a negative loss as a result of the damage caused by Hurricane Irma, and the Director's ruling affirming that conclusion, are not supported by substantial evidence.

52.     Pursuant to 5 U.S.C. § 706(1), this Court shall compel agency action unlawfully withheld.

53.     Based on the foregoing, the FSA unlawfully withheld WHIP benefits owed to RMR.

WHEREFORE, Petitioner ROLLING MEADOW RANCH GROVES, LLC respectfully requests that this Court grant its Petition for Review and:

a. Set aside the decision of the Director as set forth in Exhibit 5 and reinstate the Administrative Law Judge's ruling requiring the FSA to consider RMR's appraisal report in calculating RMR's WHIP benefits;

b. Compel the FSA to provide WHIP benefits to RMR based on the best data available to do so, in accordance with the Administrative Law Judge's ruling;

c. Award Petitioner the costs of this suit;

 d. Award Petitioner its reasonable attorneys' fees and other expenses incurred in bringing this action; and

 e. Award Petitioner such other and further relief as may be just and proper.

Dated this 3rd day of February, 2021.

            Respectfully submitted,

            */s/ Jedidiah Vander Klok*
            Jedidiah Vander Klok, Esq.
            Fla. Bar No. 84766
            Kennedys CMK LLP
            1395 Brickell Avenue, Suite 640
            Miami, FL 33131
            Tel: 305-371-1111
            Email: jedidiah.vanderklok@kennedyslaw.com
            Email: greter.medina@kennedyslaw.com
            *Counsel for Petitioner*